NAFI Corp., Appellant, *v*. American Arbitration Assn. et al., Appellees.*

(No. 633—Decided March 19, 1963.)

*Messrs. Betts & Betts*, for appellant.
*Mr. Marcus C. Downing* and *Messrs. Rudd, Ober & Miller*, for appellees.

Younger, J. The plaintiff, appellant herein, operated a plant in Findlay, Ohio, which it was forced to close due to loss of business. The defendant Union, on behalf of its members formerly employed by plaintiff, claimed compensation for vacation pay for such members and attempted to arbitrate the matter by submitting it to the defendant Arbitration Association, as provided for in the working agreement of March 1, 1956, which provided in Section 3, Article V, in part:

"Any dispute or grievance excepting wages * * * may be submitted to arbitration by either party."

Plaintiff commenced an action in Common Pleas Court asking for a declaratory judgment and construction of the working agreement and claimed that the compensation claimed for vacation pay was, in effect, wages and therefore the dispute was not subject to arbitration. A motion by the defendant Union for summary judgment was granted, and plaintiff's petition was dismissed. From that order this appeal originates.

In its order the trial court found "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

*Motion to certify the record overruled (38224), July 3, 1963.

In support of its motion for summary judgment the Union submitted the affidavit of Earl Kirkendall, president of the Union. The essence of this affidavit is that plaintiff ceased the major part of its production operations on or about July 30, 1958, leaving numerous members of the Union ready, willing and able to return to work, who had worked more than 1,000 hours during the period between June 1, 1957, and May 31, 1958; that pursuant to Sections 1, 2, 3 and 4 of Article VIII employees working more than 1,000 hours would be entitled to two days, one week, two weeks, or two weeks with additional days of vacation pay, based upon length of service with plaintiff company; that such employees were entitled to such pay; that earned vacation pay in accordance with the agreement was paid by plaintiff for the previous year; that numerous meetings were held between plaintiff and the Union concerning the payments claimed; and that "it is the position of the Union that a genuine, bona fide dispute exists between the Union and the Company over the meaning and interpretation of all the provisions of Article VIII of the contract, supplemented by the customs, practices and agreements of the parties pursuant thereto. Such dispute must be resolved under the provisions of Article V Section 3 of the agreement. * * * Consequently the Company is in violation of Article V Section 3 in not submitting this dispute to arbitration."

Plaintiff submitted two affidavits. The affidavit of George N. Lindner, Director of Industrial Relations of plaintiff, stated that the company lost contracts; reduced the number of employees; that prior to May 31st there was no work and that as a result the members who now claim vacation pay were not on the payroll of plaintiff as of June 1, 1958; and that the company acted in good faith and completely closed its operations in August 1958.

The affidavit of C. W. Cheek, submitted by plaintiff, states that the affiant, a certified public accountant, is of the opinion that the compensation, if any, due the former employees "is wages" for the reason that vacation pay is subject to deduction for withholding taxes, social security, state, local and federal income tax purposes, and among other things is used in computing the employers contribution to the state workmen's compensation fund, etc.

The majority of this court are of the opinion that the action of the trial court should be affirmed; that vacation pay is not wages, either as a matter of law or as treated by the working agreement or the union contract, which is attached to and made part of the petition; and that there is no genuine issue as to any material fact, and that therefore, the motion for summary judgment was properly granted.

In the union contract the subject of wages is covered by Article VI, while vacation pay is covered by Article VIII. There is nothing in the contract which could be interpreted as an intention of the parties to consider vacation pay as wages. The only basis for the claim of the company that vacation pay is wages, is that after it has been determined that an employee was entitled to vacation pay—that is, that he was on the payroll on June 1, that he had worked one thousand hours or more since May 31 of the preceding year, that he had not been justly discharged or quit his job, and that he was in all respects eligible thereto under the provisions of Article VIII—he was paid money by the company in the same form as his wages had been paid during the previous year. Form, however, and substance are not the same.

Wages are easily determined. X hours multiplied by Y amount per hour equals Z, gross wages. By subtracting the deductions, the size of the pay check is mathematically arrived at. Not so with vacation pay. Whether the employee is entitled to vacation pay or not depends upon many things as enumerated above, some of which could be subject to dispute and, as claimed by the Union, would be subject to arbitration. The affidavit of Earl Kirkendall states that there is a dispute over the "meaning and interpretation of all the provisions of Article VIII of the contract, *supplemented by the customs, practices and agreements of the parties pursuant thereto.*" (Emphasis added.)

The majority of the members of this court are of the opinion that the customs, practices and agreements referred to, apply only to the computation of vacation pay and the eligibility of the employees to receive the same. They have no relation to the question of whether vacation pay is wages nor do they refer to Article VI or wages. By the specific terms, this portion of the affidavit applies only to Section VIII, which sets forth conditions, eligibility, amounts and terms of vacation pay.

To hold it has any relation to the issue of whether vacation pay is wages would be contrary to the contention of the Union and the Union could not be expected to allege something in its own affidavit which would defeat its contention and lose its case.

In the case of *New Bedford Defense Products Div.* v. *Local No. 1113,* 258 F. (2d), 522, the facts are practically the same as in the instant case. The Firestone Company lost some government contracts, reduced its operations and laid off numerous employees who claimed they were entitled to vacation pay. The Union attempted to arbitrate but the company refused, claiming the dispute was not arbitrable under the provisions of the contract, which provided:

"Matters involving the general wage scale * * * shall not be a subject for arbitration."

The District Court held that the company had contracted to refer the grievance in question to arbitration and decreed for specific performance. The Circuit Court of Appeals affirmed. The court held that the issue did not involve the wage scale, and stated, at page 526:

"* * * It is certainly of no consequence that, under various public statutes such as the Bankruptcy Act * * * the Social Security Act * * * or the Labor Management Relations Act * * * the term 'wages' is held to include various so-called 'fringe benefits,' of which vacation pay is one. * * *"

For the reasons above stated, the trial court will be, and hereby is, affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., concurs.

GUERNSEY, J., dissenting. I dissent from the judgment and from the foregoing opinion.

As provided by Section 3 of Article V of the agreement executed by the parties as of March 1, 1956, and attached to the petition, all disputes or grievances "excepting wages" which could not be resolved by the parties might be submitted to arbitration by either party.

Under these circumstances if "vacation pay" constitutes "wages" a dispute or grievance involving same is not arbitrable as a matter of right. However, we are not necessarily

concerned with whether vacation pay does or does not constitute wages in common parlance or even in general industrial custom and practice. Our concern is whether or not *these* contracting parties have agreed that ''vacation pay'' is included in the term ''wages'' as used in the arbitration clause hereinbefore referred to.

If the contract attached to the petition were admittedly the only agreement by and between the parties and if it could be construed without reference to any custom or practice there would exist no issue of fact to be determined and the trial court could then have properly decided, as a matter of law, by contractual interpretation and construction, whether vacation pay constituted wages under the arbitration clause.

However, although the defendant Union has admitted in its answer the existence of the agreement of March 1, 1956, it has not admitted this to be the sole pertinent agreement, and by paragraph 8 of the affidavit of Earl Kirkendall filed and offered in support of its motion for summary judgment it is stated that ''it is the position of this Union that a genuine, bona fide dispute exists between the Union and the Company over the meaning and interpretation of *all* the provisions of Article VIII of the contract [the vacation pay article of the March 1, 1956, contract] *supplemented by the customs, practices, and agreements of the parties pursuant thereto.''* (Emphasis added.) The *customs, practices* and *agreements* of the parties do not appear in or annexed to the pleadings nor do they appear in any of the affidavits filed by the defendant Union or by the plaintiff in connection with the motion for summary judgment.

Defendant Union contending the existence of these customs, practices and agreements, with reference to vacation pay, and same not being in the record before the trial court, the defendant, itself, thus raised an issue of fact as to whether these customs, practices and agreements existed at all, and, if so, as to what they were. The presence of this issue of fact prevents a summary judgment, as it is provided, among other things, by Section 2311.041 (B), Revised Code:

''* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions of the genuineness of papers or documents, and affidavits, if any, show that there is *no genuine issue as to any material*

*fact* and that the moving party is entitled to judgment *as a matter of law.* A summary judgment shall *not* be rendered unless it appears from the pleadings, depositions, answers to interrogatories, admissions of the genuineness of papers or documents, and affidavits, if any, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; *the party against whom the motion for summary judgment is made is entitled to have such depositions, answers to interrogatories, admissions of the genuineness of papers or documents, and affidavits construed most strongly in his favor.* \* \* \*'' (Emphasis added.)

It is of no aid to defendant Union that the existence of this issue of fact appears in its own affidavit. It has been held in just such a situation that a summary judgment must be denied. *Oliver, Admr., v. Kasza,* 116 Ohio App., 398.

I cannot fathom how this court could conclude that ''the customs, practices and agreements referred to, apply only to the computation of vacation pay and the eligibility of the employees to receive the same,'' and ''have no relation to the question of whether vacation pay is wages nor do they refer to Article VI or wages,'' when none of these customs, practices and agreements is in our record.

For these reasons, and without expressing any opinion as to whether vacation pay herein constitutes wages for the purpose of arbitrability, I am of the opinion that the trial court committed error prejudicial to the appellant in rendering summary judgment in favor of defendant Union and in its separate judgment ordering arbitration by the defendant American Arbitration Association, that these judgments should be reversed, and the cause be remanded to the trial court for further proceedings.