**In re Joseph S. BATHALTER, Jr., Debtor.**

**NATIONAL ACCEPTANCE COMPANY OF AMERICA, Plaintiff,**

v.

**Joseph S. BATHALTER, Jr., Defendant.**

Bankruptcy No. 2–87–00538.
Adv. No. 2–87–0151.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Aug. 30, 1988.

Robert H. Farber, Jr., Columbus, Ohio, for debtors.

F. Richard Heath, Hite & Heath, Utica, Ohio, for Cambridge PCA.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Michelle T. Sutter, Baker & Hostetler, Columbus, Ohio, for Trustee.

Michael A. Reiter, Keith J. Shapiro, Holleb & Coff, Chicago, Ill., Susan Cultice Brown, Kincaid, Cultice & Geyer, Zanesville, Ohio, for plaintiff.

Brent A. Stubbins, Stubbins, Phillips and Co., L.P.A., Zanesville, Ohio, for defendant.

## OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This matter is before the Court upon the Motion to Dismiss filed by the defendant, Joseph S. Bathalter, Jr., the debtor in a voluntary Chapter 7 proceeding pending before this Court (Case No. 2–87–00538) ("Defendant"). The Defendant's motion seeks dismissal of the Complaint to Determine Dischargeability of A Debt filed by Heller Financial, Inc., fdba National Acceptance Company of America ("NAC"). NAC has filed a brief in opposition to Defendant's motion to dismiss. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

### II. *Factual Background*

The Defendant's motion is predicated upon the following undisputed facts:

(1) On September 19, 1984, in a civil action filed in the Federal District Court for the Northern District of Illinois ("District Court"), summary judgment was awarded in favor of NAC and against the Defendant in the amount of $8,646,211.83, plus court costs. The entry of summary judgment in favor of NAC resulted from the Defendant's failure to reply to, or submit any evidence in opposition to, NAC's summary judgment motion. The Defendant did not actively oppose the summary judgment motion, instead he chose to invoke his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. Hence, after reviewing "thousands of documents, deposition excerpts and affidavits" offered by NAC, the District Court concluded as follows:

> "[The] evidence supports NACA's claims. Thus since Bathalter has submitted no evidence in opposition to the motion which would raise any factual issues, NACA's motion for summary judgment on the issue of liability is granted."

*National Acceptance Company of America v. Bathalter*, No. 79 C 3644, slip op. at 4 (N.D.Ill. Sept. 22, 1984); (2) On February 9, 1987, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code with this Court;

(3) On May 8, 1987, NAC commenced the instant adversary proceeding against the Defendant. NAC seeks a judgment of this Court excepting from discharge the indebtedness due NAC in the amount of $8,646,211.83 pursuant to § 523(a)(2), (4) and (6).

(4) The Defendant filed the present motion to dismiss ("Dismissal Motion") on June 3, 1987.

## III. Discussion

The Dismissal Motion is premised upon Defendant's contention that the doctrines of res judicata and collateral estoppel require the dismissal of this proceeding. According to the Defendant, because the District Court order failed to contain explicit findings of fact and conclusions of law supporting a showing of nondischargeability, NAC is now barred from relitigating the issue of whether the debt to NAC is excepted from discharge under § 523(a)(2), (4) and (6) of the Bankruptcy Code. Because the doctrines of res judicata and collateral estoppel have no application in the present case, the Court finds Defendant's argument to be without merit and therefore DENIES the Dismissal Motion.

■ The basic rule of res judicata, or claim preclusion, was stated succinctly by the Supreme Court in the oft-quoted opinion of Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948):

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352 [24 L.Ed. 195] ... [1876]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

Accordingly, res judicata operates to preclude a party who has sued on a given cause of action and lost from initiating a second suit against the same adverse party asserting the same cause of action. RESTATEMENT (SECOND) OF JUDGMENTS § 19 (1982). Similarly, a defense available in the first suit between the parties may not be raised in a subsequent action between the same parties. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

In Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court discussed the applicability of the doctrine of res judicata to dischargeability disputes. The Brown case involved a guaranteed loan. Debtor defaulted and the bank brought suit against the guarantor and the debtor in state court. The guarantor filed a cross-claim against the debtor alleging that the debtor induced the guarantor to make the guarantee through misrepresentations and nondisclosures of material facts. The suit was settled by a stipulation providing that the bank should recover jointly and severally against the guarantor and the debtor, and that the guarantor would have judgment against the debtor. Neither the stipulation nor the judgment indicated the legal theory on which debtor's liability to the guarantor was based—i.e., the stipulation failed to indicate whether or not liability was premised on the commission of fraud by the debtor. Subsequently, debtor filed a voluntary petition in bankruptcy seeking to discharge his indebtedness. Brown, 442 U.S. at 128, 99 S.Ct. at 2207. In the bankruptcy case, the guarantor sought to establish that the debt was nondischargeable under § 17(a)(2) and (a)(4) of the former Bankruptcy Act of 1898. 442 U.S. at 129, 99 S.Ct. at 2208. The guarantor asserted that the guaranteed debt was the product of fraud, deceit and malicious conversion. Debtor moved for summary judgment on the grounds that res judicata barred relitigation of the nature of defendant's debts to the guarantor. The bankruptcy court granted the motion and the district court,

as well as the Tenth Circuit affirmed. 442 U.S. at 130, 99 S.Ct. at 2208.

In reversing the Tenth Circuit, the Supreme Court recognized the exclusive jurisdiction of the bankruptcy courts to resolve questions of dischargeability under § 17(a)(2) of the former Bankruptcy Act. 442 U.S. at 135, 99 S.Ct. at 2211. The Court further noted that the application of *res judicata* in the .context of dischargeability disputes is quite unlike *res judicata* in its usual setting. A creditor in a dischargeability case "readily concedes that the prior decree is binding. That is the cornerstone of his claim. He does not assert a new ground for recovery, nor does he attack the validity of the prior judgment. Rather, what he is attempting to meet here is the new defense of bankruptcy which [the debtor] has interposed between [the creditor] and the sum determined to be due him." 442 U.S. at 133, 99 S.Ct. at 2210. Furthermore, the *Brown* Court held that application of *res judicata* in dischargeability disputes would inspire needless litigation by forcing "an otherwise unwilling party to try § 17 [11 U.S.C. § 523] questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future." *Id.* at 135, 99 S.Ct. at 2211.

The Sixth Circuit has followed the mandate of *Brown*. In *Spilman v. Harley*, 656 F.2d 224, 226–27 (6th Cir.1981), the Sixth Circuit stated as follows:

> The Supreme Court in *Brown, supra*, recognizing the exclusive jurisdiction of the bankruptcy courts, held that a bankruptcy court was not precluded by *res judicata* from considering extrinsic evidence on an issue which would have been litigated in the prior state court litigation but was not. In that case, the state suit had been settled by a stipulation but the stipulation did not indicate upon what cause of action the liability was based or whether or not the bankrupt had committed fraud. The court rejected *res judicata* in a dischargeability proceeding. It reasoned that where issues in state court were not identical to those in the bankruptcy proceeding, the parties would have little incentive to litigate them and

that an express ruling by state courts on dischargeability questions would undermine the congressional intent to vest jurisdiction within the bankruptcy courts.

Hence, as the Supreme Court established in *Brown*, and the Sixth Circuit echoed in *Spilman*, the exclusive jurisdiction of bankruptcy courts to resolve questions of dischargeability granted by the Code precludes the application of the doctrine of *res judicata* to resolve questions of dischargeability. Therefore, the doctrine of *res judicata*, or claim preclusion, does not prevent NAC from litigating the issue of whether conduct on the part of the Defendant would render his indebtedness to NAC nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and/or (6).

■ Although the Supreme Court in *Brown* ruled out the use of *res judicata* to resolve questions of dischargeability, the Court expressly reserved comment on the potential applicability of collateral estoppel, or issue preclusion, in dischargeability litigation. 442 U.S. at 140, 99 S.Ct. at 2213 n. 10. In *Spilman*, the Sixth Circuit described the use of the doctrine of collateral estoppel in dischargeability disputes as follows:

> Applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy courts while at the same time encouraging judicial economy. The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. It must apply statute to the facts and decide to discharge or not. Therefore, *res judicata* does not apply to prevent litigation of every issue which might have been covered in the state court proceeding on the debt. However, that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts. *As the Court held in Brown, where the facts necessary for*

*a dischargeability determination were not necessary to the determination in the prior judgment, the parties should not be bound or else the parties would always have to anticipate future bankruptcy proceedings and the state courts would be deciding facts not necessary to the state proceedings but only relevant to a possible future bankruptcy proceeding. In effect, state courts would then be deciding issues directly concerning dischargeability, contrary to Congressional intent.* However, where the factual issues necessary for dischargeability determination were also necessary to the state court determination, the parties would not have to anticipate the bankruptcy proceedings and the state courts would not be determining issues irrelevant to the state proceedings. Collateral estoppel is applied to encourage the parties to present their best arguments on the issues in question in the first instance and thereby save judicial time. There is no reason to suppose that parties will not vigorously present their case on issues necessary to the state court proceedings or that the bankruptcy court will be any more fair or accurate than the state court in determination of the facts. Thus, there is no reason to allow relitigation of facts previously litigated which were necessary to the outcome of that prior litigation. This court holds that where all the requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues.

. . . .

If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court.

. . . .

Thus, before applying the doctrine of collateral estoppel, the bankruptcy court must determine if the issue was actually litigated and was necessary to the decision in the state court. To do this, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment, or hold a hearing if necessary.

656 F.2d at 227–28 (emphasis added) (citations omitted).

Application of the foregoing principles to the facts of the present case, clearly reveals the fallacy of the Defendant's argument. None of the necessary prerequisites to application of the doctrine of collateral estoppel are present here. Clearly, the facts necessary to a dischargeability determination were not actually litigated in the Illinois District Court proceeding. Nor were such facts necessary to a determination of the outcome in such action. As the Sixth Circuit noted in *Spilman,* it would be unreasonable to require a party to anticipate a future bankruptcy and, therefore, present facts in a state court proceeding which ultimately would bear on a dischargeability determination. Hence, as the *Spilman* court recognized, absent actual litigation in a prior proceeding, collateral estoppel does not bar relitigation in the bankruptcy court. *Spilman,* 656 F.2d at 228. In sum, because the issue of whether the character of the Defendant's conduct would render the debt owing NAC nondischargeable was neither actually litigated in the District Court proceeding nor necessary to the District Court's decision, the doctrine of collateral estoppel does not preclude litigation of the instant dischargeability dispute in this Court.

■ Having denied the Dismissal Motion, the Court shall briefly address NAC's contention that sanctions should be imposed against the Defendant and his counsel pursuant to Bankruptcy Rule ("B.R.") 9011. The basis of NAC's argument is that the Defendant and his counsel have filed a "frivolous motion to dismiss and [have ignored or not called to the Court's attention] clearly applicable United States Supreme Court precedent." Reply Memorandum of NAC at 10. The Court finds NAC's argument to be meritless. While the arguments advanced by Defendant and his attorney in the Dismissal Motion are not legally sustainable, the Court cannot conclude that the Dismissal Motion was "interposed for an improper purpose, such as to

harass, to cause delay or to increase the cost of litigation." *See, In re Phillips,* 82 B.R. 914, 917 (Bankr.S.D. Ohio 1988). Accordingly, the Court shall not impose sanctions upon Defendant and his counsel pursuant to B.R. 9011.

Based upon the foregoing, the Defendant's Rule 7012(b) Motion to Dismiss shall be, and is hereby, DENIED. Further, NAC's request that B.R. 9011 sanctions be imposed upon Defendant and his counsel is also hereby DENIED.

IT IS SO ORDERED.