ELECTRONIC CITATION: 14 FED App.0007P (6th Cir.)
File Name: 14b0007p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: KENNETH RAY ANDERSON;<br>LINDA CAROL ANDERSON,<br><br>Debtor(s).<br>_____<br><br>KENNETH RAY ANDERSON;<br>LINDA CAROL ANDERSON,<br><br>Plaintiffs - Appellees,<br><br>v.<br><br>JAMES FISHER; RUBY FISHER,<br><br>Defendants - Appellants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 14-8007 |

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky, at London.
No. 13-60469; Adv. No. 13-06021.

Decided and Filed: September 15, 2014

Before: EMERSON, OPPERMAN, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ON BRIEF:** Travis A. Rossman, ROSSMAN LAW, PLLC, Barbourville, Kentucky, for Appellants.
Marcia A. Smith, Corbin, Kentucky, for Appellees.

---

## OPINION

---

**GEORGE W. EMERSON, JR.**, Bankruptcy Appellate Panel Judge. Debtors Kenneth Ray Anderson and Linda Carol Anderson ("Debtors") appeal the bankruptcy court's memorandum opinion and orders granting partial summary judgment, dismissing remaining claims, and granting final judgment to James and Ruby Fisher ("Fishers") and concluding that the unliquidated state court penalty default judgment[1] owed to the Fishers is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## I.   ISSUES ON APPEAL

The issue presented in this appeal is whether the bankruptcy court erred when it found that the Tennessee penalty default judgment entered against the Debtors was entitled to preclusive effect based on the Full Faith and Credit Statute, 11 U.S.C. § 1738, and the doctrine of collateral estoppel.

The Fishers also maintain that summary judgment was proper because Debtors filed no affidavits with the bankruptcy court and failed to establish that there was a genuine issue of material fact before the bankruptcy court.  Because the bankruptcy court did not err on the first issue, the Panel does not need to reach the second issue.

---

[1] *See Sterling Factors, Inc. v. Whelan* (*In re Whelan*), 236 B. R. 495, 507-08 (Bankr. N.D. Ga. 1999) modified sub nom. *Sterling Factors, Inc. v. Whelan*, 245 B.R. 698 (N.D. Ga. 2000) . Penalty default judgments are default judgments entered as a sanction "[w]here a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment[.]" *Bush v. Balfour Beatty Bahamas, Ltd.* (*In re Bush*) 62 F.3d 1319, 1325 (11th Cir. 1995).  Several "[c]ourts in other circuits have also given collateral estoppel effect in bankruptcy dischargeability proceedings to prior penalty default judgments[.]" *Whelan*, 236 B.R. at507; *Angus v. Wald* (*In re Wald*), 208 B.R. 516, 552 (Bankr. N.D. Ala. 1997) ("[P]enalty default judgments . . . [are] rendered for purposeful evasion of service, refusal to participate in discovery, and willful failure to appear for trial."); *see generally Wolstein v. Docteroff* (*In re Docteroff*), 133 F.3d 210 (3d Cir.1997) (referencing deliberately preventing the resolution of the lawsuit); *Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195 (5th Cir.1996) (holding discovery violations can act as collateral estoppel in bankruptcy dischargeability cases); *FDIC v. Daily* (*In re Daily*), 47 F.3d 365 (9th Cir.1995) (holding that default resulted from the debtor's deliberate, dilatory, and obstreperous conduct).

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and none of the parties has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1).

For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S. Ct. 1945, 1949 (1988)). A partial summary judgment order "that does not dispose of all parties and all claims is generally not immediately appealable[.]" *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009). The bankruptcy court's ruling on the summary judgment motion did not dispose of all the claims before the court. The Fishers later dismissed all of their remaining claims. Once the remaining parts of a case are dismissed or otherwise resolved, a grant of partial summary judgment becomes a final judgment. *Id.*, (citing *J.D. Pharm. Distribs., Inc. v. Save-On Drugs & Cosmetics Corp.*, 893 F.2d 1201, 1208 (11th Cir. 1990)).

A grant of summary judgment is a conclusion of law, reviewed *de novo*. *Medical Mutual of Ohio v. K. Amalia Enters., Inc.*, 548 F.3d 383, 389 (6th Cir. 2008). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citing *Mazur v. Young*, 507 F.3d 1103, 1106 (6th Cir 2007)). "Under a *de novo* standard of review, the reviewing court decides the issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citing *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (6th Cir. B.A.P. 2001)).

"The determination of the applicability of collateral estoppel is also reviewed *de novo*. *Spring Works, Inc. v. Sarff* (*In re Sarff*), 242 B.R. 620, 623 (B.A.P. 6th Cir. 2000) (citing *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 461 (6th Cir.1999).

### III.   FACTS

The underlying facts of this case are not in dispute.  Debtors were defendants in a civil lawsuit filed in Tennessee Circuit Court (the "State Court Lawsuit") that arose from a series of real estate sales in a residential community developed by the Debtors (the "State Court Complaint").  The development was called "The Village of Arcadian Springs," in Anderson, Tennessee.  The Fishers, along with several other plaintiffs, allege that they were fraudulently induced to purchase waterfront lots by the Debtors' misrepresentations concerning the construction of a lake and other amenities which were never completed.  In the State Court Complaint, the plaintiffs alleged that the Debtors committed fraud, misrepresentation, deceit, negligence, conversion, negligent and intentional infliction of emotional distress, outrageous conduct, breach of contract, breach of warranty, and statutory claims under the Tennessee Consumer Protection Act and the Fair Debt Collection Practices Act.  The Debtors filed their answer to the State Court Complaint eight months later and were repeatedly compelled by order of the circuit court to respond to discovery requests.  Ultimately, the Plaintiffs filed a motion to compel, motion for sanctions, motion for entry of a default judgment, and motion to dismiss against the Debtors.  After a hearing, the circuit court granted the Plaintiffs' motion for default judgment.

The circuit court's judgment (the "State Court Judgment") recognized the Debtors' repeated refusals to comply with court orders regarding discovery and then struck the Debtors' answer from the record.  The State Court Judgment stated, in pertinent part,

> The Plaintiffs are entitled to a Judgment pursuant to the allegations set forth in their Complaint including . . . violation of the Tennessee Consumer Protection Act...and that the [Debtors] have committed the following torts: negligence; misrepresentation; fraud; conversion; negligent and intentional infliction of emotional distress; outrageous conduct; and deceit . . . . This court specifically holds that the Plaintiffs are entitled to a Default Judgment on the above-stated grounds, and that a hearing will be set to determine the exact amount of compensatory damages and punitive damages which the Plaintiffs are entitled to receive . . . .

Ex. B to Mot. For Summ. J., Adv. Proc. No. 13-06021, ECF No. 6-2 at 6-7.

The Debtors filed their Chapter 7 bankruptcy petition just prior to the scheduled hearing on damages in circuit court.  The Fishers filed an adversary proceeding alleging that the judgment debts

were nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6). After the Debtors filed their answer, the Fishers moved for summary judgment on the § 523(a)(2)(A) claims based on the collateral estoppel effect of the State Court Judgment finding that Debtors had committed fraud, misrepresentation and deceit.

The bankruptcy court's memorandum opinion relied primarily upon *Rally Hill Productions, Inc. v. Bursack* (*In re Bursack*), 65 F.3d 51 (6th Cir. 1995) to determine whether or not the Tennessee state court judgment should be afforded collateral estoppel effect on a subsequent dischargeability action. In *Bursack*, the Sixth Circuit Court of Appeals stated, "Under Tennessee law, collateral estoppel bars relitigation of an issue if it was raised in an earlier case between the same parties, actually litigated, and necessary to the judgment of the earlier case." *Id*. at 54 (citation omitted).

The bankruptcy court thoroughly analyzed its obligation to give full faith and credit to the State Court Judgment. The bankruptcy court also carefully compared the elements of 11 U.S.C. § 523(a)(2)(A) to the requirements necessary to sustain a cause of action for fraud in Tennessee, as alleged in the Fishers' complaint, and concluded that they were the same. The bankruptcy court then found that the fraud claims were actually litigated in the circuit court, especially in light of the Debtors' participation in the State Court Lawsuit. Finally, the bankruptcy court found that the finding of fraud was necessary in order to support the State Court Judgment. The bankruptcy court concluded that collateral estoppel applied to the state court fraud claims brought by the Fishers, rendering them non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). In its final judgment and order dismissing the Fishers' remaining claims, the bankruptcy court ordered that damages for the state court fraud claims would be determined by the appropriate state court.

## IV. DISCUSSION

The Debtors are urging the Panel to reverse and remand this case to the bankruptcy court because the bankruptcy court's decision relied, in part, on *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315 (6th Cir. 1997), which the Debtors argue was "wrongly decided." In *Calvert*, the Sixth Circuit Court of Appeals held that collateral estoppel applies to true default judgments in

bankruptcy dischargeability proceedings in those states that would give such judgments that effect. As later noted by the Sixth Circuit Bankruptcy Appellate Panel:

> The [*Calvert*] court concluded that state court judgments, including default judgments, that would have been given preclusive effect in their state of origin, regardless of whether or not "the important issues were actually litigated in the prior proceeding," would be given preclusive effect in bankruptcy discharge exception proceedings. *Id.* In so doing, the Circuit broke from its previous expression in *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981), which referred to issues which "were actually litigated."

*Nat'l City Bank v. Plechaty* (*In re Plechaty*), 213 B.R. 119, 129 (B.A.P. 6th Cir. 1997).

Because *Calvert* was wrongly decided, the Debtors reason, the bankruptcy court should instead have relied on *Spilman* and found that the judgment did not preclude relitigating the dischargeability issue in the Debtors' bankruptcy case. "If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court." *Spilman,* 656 F.2d at 228.

In *Calvert*, the Sixth Circuit stated that it was not bound by *Spilman* because the issue of the collateral estoppel effect of a default judgment was not before the *Spilman* court and because *Spilman* was decided before the Supreme Court issued its decision in *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S. Ct. 1327 (1985).

> In *Marrese*, the Supreme Court, in accordance with the Full Faith and Credit Statute, instructed lower federal courts faced with the question of whether to give full faith and credit to a state court default judgment to "consider first the law of the State in which the Judgment was rendered to determine its preclusive effect." If the state court would not give preclusive effect to a default judgment, the analysis is complete. If, however, the state would accord the judgment preclusive effect, *Marrese* instructs that the federal court give preclusive effect to the judgment unless Congress has expressly or impliedly created an exception to § 1738 which ought to apply to the facts before the federal court.

*Calvert,* 105 F.3d at 317 (citations omitted).[2] Because *Marrese* did not expressly overrule *Spilman*, Debtors continue to press *Spilman* as if it were valid precedent.[3]

Debtors argue that an exception to the Full Faith and Credit Statute exists for dischargeability determinations based on *Brown v. Felsen,* 442 U.S. 127, 138, 99 S. Ct. 2205, 2212 (1979). However, the *Brown* Court stated that its holding was specifically limited to the principle of res judicata. "This case concerns res judicata only, and not the narrower principle of collateral estoppel." *Id*. at 139, 99 S. Ct. at 2213, n.10. *Brown* was a pre-Bankruptcy Code case issued at a time when State courts frequently decided issues of dischargeability. *Brown* is distinguishable on its facts as well as its legal issues. In *Brown*, Debtor Mark Felsen sought to preclude a creditor from bringing a dischargeability action against him in bankruptcy court because the same parties had previously agreed to a judgment in state court. The state court judgment did not address either dischargeability or fraud. Felsen sought to use claim preclusion, or res judicata, to prevent the creditor from bringing a dischargeability action based on fraud in bankruptcy court.

The Supreme Court refused to preclude the creditor from asserting the non-dischargeability action and did not foreclose the bankruptcy court's review of evidence other than what was presented in the state court action.[4] Debtors assert that the *Brown* decision found that Congress intended to except dischargeability actions from the Full Faith and Credit Statute. This misstates the holding of *Brown*. The *Brown* Court was faced with deciding whether to foreclose a creditor from bringing

---

[2] 28 U.S.C. § 1738 provides, in pertinent part:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States . . . . Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

[3] In their brief, the Debtors state that *Brown,* its progeny *Spilman*, and *Marrese* "are all consistent and dovetail to provide that Congress intended the Federal law of preclusion to govern dischargeability determinations, not state law . . . ." Appellants' Brief, at 15. This is simply incorrect.

[4] The Debtors appear to be confusing claim preclusion with collateral estoppel (also known as issue preclusion), which the *Brown* Court did not need to address, instead stating: "If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 (dischargeability determinations), then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." *Brown*, 442 U.S. at 139, 99 S. Ct. at 2213, n.10.

a dischargeability action in bankruptcy court. Congress had previously passed legislation which granted to the bankruptcy courts exclusive jurisdiction over such dischargeability proceedings. The *Brown* Court stated that a state court judgment, which did not specifically find that the debt in question was nondischargeable, would not foreclose a creditor from subsequently bringing a dischargeability action in bankruptcy court--the specific venue in which Congress intended such actions be brought.

*Brown* stated that Congressional intent is that dischargeability causes of action be within the exclusive jurisdiction of the bankruptcy court. *Id.* at 135-136, 99 S. Ct. at 2211-2212. *Brown*'s holding simply cannot be extended to say that Congress intended that dischargeability determinations should be an exception to the Full Faith and Credit Statute.

In *Calvert*, the Sixth Circuit expressly concluded that Debtors' arguments are without merit:

> This Court's review of the Bankruptcy Code and the extensive amount of legislative history of the Code confirms the court's conclusion in *In re Byard* that neither reveal anything that would suggest that Congress intended to exclude default judgments obtained in state court from the applicability of the Full Faith and Credit Statute in dischargeability proceedings in bankruptcy court.

*Calvert*, 105 F.3d at 320-321(citing *Harris v. Byard* (*In re Byard*), 47 B.R. 700 (Bankr. M.D. Tenn. 1985)).

The Debtors fail to mention the Supreme Court's decision in *Grogan v. Garner,* 498 U.S. 279, 285, 111 S. Ct. 654, 658 n.11 (1991), in which the Court stated, "[w]e now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." While the *Grogan* case dealt mainly with the burden of proof that should be applied in dischargeability proceedings, the Court stated that if the preponderance of the evidence standard was adopted by the Court, bankruptcy courts could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for a dischargeability action and which were actually litigated and determined in the prior action. *Id.* at 284, 111 S. Ct. at 658. The Court then concluded that the standard of proof in § 523 actions is the ordinary preponderance of the evidence standard. *Id.* at 291, 111 S. Ct. at 661.

Tennessee state courts have yet to decide whether, as here, a *penalty* default judgment should also be afforded collateral estoppel effect in a subsequent proceeding. However, Tennessee state courts would give preclusive effect to a "true" default judgment in which the Defendant failed to answer. *Lawhorn v. Wellford,* 168 S.W. 2d 790, 792 (Tenn. 1943). *See also White v. Rogers* (*In re Rogers*), 57 F.3d 1070, 1995 WL 364154 (6th Cir. 1995)*; Brown v. Ausley* (*In re Ausley*), 507 B.R. 234, 242 (Bankr. W.D. Tenn. 2014); *Stephens v. Morrison* (*In re Morrison*), 450 B.R. 734, 754 (Bankr. W.D. Tenn. 2011).

The facts of this case most closely resemble the facts of *Rally Hill Productions, Inc. v. Bursack* (*In re Bursack*), 65 F.3d 51 (6th Cir. 1995). In that case, Bursack filed an answer to a complaint in Tennessee state court that alleged he had made false representations and submitted false financial statements to the plaintiff upon which the plaintiff relied in loaning money. *Id.* at 52. Bursack answered, asserted cross-claims against the plaintiff, and attended two depositions. When Bursack failed to appear at trial, the state court entered a default judgment against him.

In a subsequent dischargeability action, the bankruptcy court entered summary judgment in favor of the judgment creditor. On appeal, the Sixth Circuit Court of Appeals concluded that the default judgment in *Bursack* differed from a "true" default judgment of the type discussed in *Spilman* because the issues were "actually litigated to the extent that Bursack retained an attorney, filed an answer, asserted cross-claims, and participated in discovery, which included his submitting to two depositions . . . . His strategic decision not to appear at the trial does not undo his earlier active participation in the litigation." *Id*. at 54.

Like Bursack, the Debtors retained an attorney, filed an answer, and participated in the discovery process to the extent that their repeated failures to respond properly resulted in the penalty default judgment. The fraud issues in this case, like those of *Bursack*, were necessary to the outcome of the State Court Judgment and were, therefore, actually litigated.

Subsequent to *Bursack*, the Sixth Circuit's *Calvert* decision applied the Full Faith and Credit Statute and collateral estoppel to give preclusive effect to a California state court "true" default judgment. Tennessee state courts also give preclusive effect to "true" default judgments. Following

*Bursack* and *Calvert*, it appears that the Debtors' participation in the Tennessee state court lawsuit make it even more likely that a Tennessee state court would give preclusive effect to the penalty default judgment in this case. Accordingly, the Panel finds that the default judgment is entitled to preclusive effect.

## V.  CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is affirmed in its entirety.